Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7141 | **DATE** | 6/3/2002 |
| **CASE TITLE** | Home Repair, Inc. vs. Universal Restoration Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Universal's motion to dismiss (Doc. No. 9-1) is granted and its motion to reassign (Doc. No. 0-1) is denied as moot. Home Repair has leave to file an amended complaint within 21 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JUN 05 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 6/3/2002 date mailed notice |
| ETV | courtroom deputy's initials | 02 JUN -4 PM 3:51 Date/time received in central Clerk's Office | ETV mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOME REPAIR, INC., a Delaware corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 01 C 7141 |
| UNIVERSAL RESTORATION SERVICES, ) INC., an Illinois corporation, ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. ) | |

DOCKETED JUN 5 2002

## MEMORANDUM OPINION AND ORDER

The parties to this case were franchisees in the "Paul Davis System," a construction restoration business. Plaintiff Home Repair, Inc. hoped to purchase from Defendant Universal Restoration Services, Inc. the right to serve the territory to which Universal was assigned. The franchisor refused to sanction the deal, however, and this litigation followed.

In its complaint, Plaintiff Home Repair, Inc., a Delaware corporation, (hereinafter, "Home Repair") alleges that Defendant Universal Restoration Services, Inc., an Illinois corporation, (hereinafter, "Universal"), breached an October 22, 1997 agreement between the parties. Defendant Universal moves to dismiss the complaint for failure to state a claim for relief, arguing that the October 22 agreement was not a contract and that, even if it were, Plaintiff has not alleged a breach. For the following reasons, Defendant's motion is granted.

## FACTUAL BACKGROUND

As of 1997, both Home Repair, Inc. and Universal were franchisees of the "Paul Davis System." (Amended Complaint ¶¶ 5, 15.) Paul W. Davis Systems, Inc. (hereinafter, "PWDS"), a Florida corporation with its principal place of business in Jacksonville, Florida and franchisor of the "Paul Davis System," grants its franchisees the right to use the PWDS trade name, logo, operations manual, business systems, and computer software in a general contracting and cleaning business.



PWDS franchisees provide structural renovation and repair services to both the general public and insurance restoration markets. (Amended Complaint ¶¶ 6-7.) Under its franchise agreement, each PWDS franchisee is assigned an exclusive geographic territory, and may provide services under the PWDS trade name only in its exclusive territory. (Amended Complaint ¶ 8.) The PWDS franchise agreements also include a noncompetition provision prohibiting the franchisee from competing with PWDS or with any other PWDS franchisee in the same business while operating the franchise, and for a period of two years following termination of the franchise. (Amended Complaint ¶ 9.) Universal's franchise agreements with PWDS include this standard noncompetition provision, as well as a prohibition on assignment or transfer of the franchise without PWDS's prior written consent.[1] (Amended Complaint ¶ 14.) Plaintiff's Amended Complaint itself notes the provision, quoting the following language:

> This Agreement and Principal Owner's and Franchisee's rights and interests hereunder shall not be sold, assigned, transferred or encumbered, in whole or in part, in any manner whatsoever to any entity (other than to the company pursuant to Article 6 hereof) without the prior written consent of Franchisor. Such consent shall not be unreasonably withheld.

(Amended Complaint ¶ 14.)

In 1997, Home Repair operated a PWDS franchise in the Little Rock, Arkansas area, while Universal operated a PWDS franchise in the Greater Chicago metropolitan area. (Amended Complaint ¶¶ 11, 13.) By September 1997, Phil Goldstein, the principal officer of Universal, had decided that he wanted to withdraw his business, then known as Paul W. Davis Systems of Northern Illinois, Inc., ("PWDSNI"), from the PWDS franchise network and run an independent business. (Amended Complaint ¶¶ 2, 16.) Although he wanted to continue operating an insurance restoration business in his exclusive PWDS territory, Goldstein wanted to focus on larger commercial projects not typical of the restoration projects comprising the bulk of the work done by

---

[1] Unfortunately, the parties have not provided a copy of Universal's franchise agreements with PWDS.

the PWDS franchises. (Amended Complaint ¶ 16.) To that end, he changed PWDSNI's name to Universal. (Amended Complaint ¶ 16.) On September 19, 1997, Goldstein and his attorney met with PWDS Chairman Paul Davis and PWDS's attorney to negotiate a separation. Goldstein attempted to persuade PWDS to release Universal from the noncompetition restrictions, but PWDS refused. (Amended Complaint ¶ 17.)

Throughout the remainder of September and October 1997, Goldstein attempted to negotiate an agreement under which PWDS would permit Universal to exit the franchise system and would agree not to enforce the noncompetition clause. (Amended Complaint ¶ 18.) PWDS declined to accept such an arrangement, however, despite Goldstein's alleged threats to initiate "protracted and divisive litigation," potentially in concert with other franchisees, if PWDS did not agree to his terms. (Amended Complaint ¶ 18.)

Sometime in October of 1997, Goldstein contacted Eric Tucker, the sole officer and shareholder of Home Repair, and advised Tucker that he was willing to sell Universal's franchise territories to Home Repair. (Amended Complaint ¶ 19.) Goldstein disclosed that he intended to run a business that would compete with the franchise he proposed to sell to Tucker. (Amended Complaint ¶ 20.) During their conversations regarding the possible sale, Tucker told Goldstein that Home Repair would not object to Universal's continuing in a competing business after the sale, but that he expected PWDS to enforce its noncompetition provision. (Amended Complaint ¶ 19.) Goldstein replied that he believed PWDS would be unable to obtain judicial enforcement of the noncompetition provisions in his franchise agreements, and that he was prepared to litigate the issue. (Amended Complaint ¶ 20.) Goldstein further explained to Tucker that he would not let the prospects of litigation with PWDS deter him from selling the franchise to Home Repair. (Amended Complaint ¶ 20.)

On October 22, 1997, Goldstein signed a letter agreement (hereinafter "Letter Agreement") drafted by Tucker, which purported to "outline in principal (sic) the transaction by which [Home

3

Repair] . . . acquires certain assets and assumes certain liabilities of [PWDSNI]" on the terms and conditions set forth in the Letter Agreement. (Amended Complaint ¶ 21; Letter Agreement, Exhibit A to Amended Complaint.) Plaintiff alleges that the agreed purchase price of $450,000 was significantly less than the fair market value of Universal's territories, and no down payment was required. (Amended Complaint ¶¶ 22-23.) In return for this discounted price, Home Repair agreed that it would not challenge Universal's attempts to compete in the exclusive territories after the sale.[2] (Amended Complaint ¶ 24.) The Letter Agreement also expressly conditioned the transaction upon the execution of a mutually acceptable purchase agreement and the receipt of all necessary approvals and consents from third parties, including PWDS. (Amended Complaint ¶ 25.) Specifically, the Letter Agreement stated:

> The Transaction is conditional upon satisfactory completion of the following:
> (A) <u>Purchase Agreement</u> Execution of a mutually acceptable purchase agreement embodying the terms of this letter . . .
> (B) <u>Approval</u> Receipt of all approvals and consents from third parties which are necessary to consummate the transaction contemplated herein, including but not limited to the consent of Paul W. Davis Systems, Inc. (the "Franchisor") and the waiver by the Franchisor of its rights of first refusal pursuant to Section 20.2 of the Franchise Agreements.

(Letter Agreement, Ex. A to Plaintiff's Amended Complaint.) The Letter Agreement provided that the closing date of the transaction would be "as soon as practical but no later than January 15, 1998, provided however that the Seller may request and the Purchaser shall grant a closing date extension of three months." (*Id.*)

On October 27, 1997, an attorney for Universal furnished a copy of the Letter Agreement to PWDS and formally requested that PWDS consent to the transfer of Universal's franchise rights to Home Repair. (Amended Complaint ¶ 26.) On November 24, 1997, PWDS president Scott

---

[2] Paragraph 7 of the Letter Agreement stated "Purchaser acknowledges that Seller intends to operate in the industry and in the Territory after the Closing Date and Purchaser agrees not to initiate, file, prosecute or seek any legal redress against Seller relating to such activities provided that Seller operates under a trade name dissimilar to 'Paul Davis System'." (Letter Agreement, Ex. A to Plaintiff's Amended Complaint.)

4

Baker responded in a letter in which he refused to approve the transfer "in its present form" and stated:

> Paragraph 7 of the letter agreement between [Universal] and Mr. Tucker provides that [Universal] will continue to engage in the business of insurance restoration after your proposed transfer to Mr. Tucker. PWDS cannot consent to a proposed transfer unless the transferring franchisee agrees to continue to comply with the non-compete provisions contained in the franchise agreement. As a result of this policy, it is our standard procedure in transfer situations to require transferring franchisees (including Principal Owners) to execute a standard Voluntary Termination Agreement and Release, which provides, in relevant part, that the covenant against competition survives the termination of the franchise agreement.[3]

(Amended Complaint ¶ 27.) The letter further stated that "if you elect to modify your transaction so that [Universal] will not continue to engage in the insurance restoration business, PWDS, will, of course, reconsider your request for consent at that time." (Amended Complaint ¶ 27.)

Universal did not sign a Voluntary Termination Agreement and Release, and did not obtain PWDS' approval of the proposed transaction. (Amended Complaint ¶¶ 28-29.) Instead, Plaintiff alleges, Universal resumed its negotiations with PWDS to be released from its noncompetition obligations but made no further efforts to seek approval of the transaction set forth in the Letter Agreement.[4] (Amended Complaint ¶ 30.) Home Repair was unaware that PWDS had refused to approve the transaction, nor did Home Repair know that Universal continued to negotiate for release from the noncompetition clause. (Amended Complaint ¶¶ 31-32.) In a letter to Goldstein dated January 15, 1998, Tucker again acknowledged that "there may be some challenge with

---

[3] The parties have not provided a copy of the November 24, 1997 letter from PWDS to Universal.

[4] Home Repair's allegation appears to presume that these two courses of action are inconsistent. The court is not certain that they are. Securing the release of the noncompetition provision was essential to gaining PWDS's approval of the contemplated transaction; thus, the fact that Universal turned its attention to release from the noncompetition provision does not require the conclusion that Universal had given up on obtaining consent for the deal with Home Repair. Nor is it clear from Home Repair's allegations that, had Universal succeeded in being released from the noncompetition provision in its franchise agreement, it would have cancelled its plan to sell its franchise rights to Home Repair.

5

[PWDS] allowing [Goldstein] to continue in business after the transfer."[5] (Amended Complaint ¶ 33.) On February 6, 1998, Home Repair's counsel sent Universal a letter demanding that Universal close the agreed sale with Home Repair. (Amended Complaint ¶ 34.) Universal refused to close the sale with Home Repair and continued pursuing a release from PWDS from the noncompetition obligations. (Amended Complaint ¶ 34.) By April 2, 1998, Universal concluded these negotiations had failed and filed suit against PWDS alleging, inter alia, that PWDS had no protectable interest covered by the noncompetition provision and that PWDS had breached the implied covenant of good faith and fair dealing in refusing to consent to Universal's proposed transfer of its franchise to Home Repair.[6] (Amended Complaint ¶ 35.) (See *Universal Restoration Servs., Inc. v. Paul W. Davis Systems, Inc.*, No. 98-C-2027, 2002 WL 596380 (N.D. Ill. Apr. 17, 2002).[7]

Plaintiff Home Repair filed its original complaint in this case on September 14, 2001, alleging that Universal breached its express and implied contractual duties under the Letter Agreement, including the duty of good faith and fair dealing. On December 12, 2001, Plaintiff

---

[5] The record does not explain why this letter was sent.

[6] On October 15, 1998, the court ordered the case to arbitration and, as of this date, the matter has not been resolved. (Amended Complaint ¶¶ 36, 37.) Home Repair alleges that from March 1998 until November 2000, Universal competed against the Paul Davis System while maintaining its franchise status. (Amended Complaint ¶ 38.) The court is uncertain how this could be; if Universal was operating a PWDS franchise, presumably that activity benefitted the franchisor. After November 2000, Universal allegedly ceased operations as a Paul Davis franchisee and continued to compete against the Paul Davis System. (Amended Complaint ¶ 39.)

[7] In 1998, Home Repair also filed suit against PWDS alleging that PWDS had engaged in race discrimination and had tortiously interfered with Home Repair's business expectancy by its refusal to consent to the sale of Universal's territories to Home Repair. The court dismissed the claim of tortious interference, holding that PWDS was a party to the prospective contract and therefore could not be liable for tortious interference. *Home Repair, Inc. v. Paul W. Davis Systems, Inc.*, No. 98 C 4074, 1998 WL 721099 (N.D. Ill. Oct. 9, 1998). The court denied the motion to dismiss the claim of race discrimination, *id.* at *21, and, several months later, denied summary judgment on that claim. See *Home Repair, Inc. v. Paul W. Davis Systems, Inc.*, No. 98 C 4074, 2000 WL 126905 (N.D. Ill. Feb. 1, 2000). The case has now been settled.

amended its complaint to add more factual detail, but did not change the original claims. Defendant Universal now moves to dismiss, contending that Plaintiff failed to state a claim upon which relief can be granted.

## DISCUSSION

On a motion to dismiss, this court accepts as true all well-pleaded facts and allegations in the plaintiff's complaint, and construes the complaint's allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). This court is not, however, required to accept as true conclusory statements of law or unsupported conclusions of fact. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Further, where a plaintiff "alleges facts that establish that a defendant is entitled to prevail on a motion to dismiss, the court may find that the defendant has plead himself out of court." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

Plaintiff Home Repair alleges that Defendant Universal breached the implied covenant of good faith and fair dealing in the Letter Agreement. To plead such a claim for breach of contract, Home Repair must first establish the existence of a legally binding contract.[8] *Action Constr. & Restoration v. West Bend Mut. Ins. Co.*, 322 Ill. App. 3d 181, 182, 748 N.E.2d 824, 826 (2nd Dist. 2001). Defendant Universal argues: (1) that the parties did not intend for the Letter Agreement to be a legally binding contract, and that, in any event, it cannot be required to sell the franchise to Home Repair because the necessary conditions were not met; (2) PWDS was a necessary party to any contract to sell Universal's franchise and its absence from the Letter Agreement renders the Letter Agreement unenforceable; and (3) under Illinois law, Home Repair cannot recover for breach of the implied covenant of good faith and fair dealing unless Universal breached an underlying express contractual provision. Universal is correct that Plaintiff must establish the existence of a

---

[8] The parties agree that Illinois law governs this dispute.

contract before it can claim a breach, and in their briefs the parties appropriately addressed the issue of whether the Letter Agreement constitutes an enforceable contract. As explained further herein, however, the court finds it unnecessary to decide the issue. The court concludes that, even assuming the Letter Agreement is enforceable, Home Repair has not alleged a breach.

According to Home Repair, Universal breached its obligation of good faith by failing to obtain approval from PWDS of the deal between the parties. Home Repair argues that because both parties signed the Letter Agreement, both parties had the obligation to act in good faith to secure the necessary approvals to fulfill its conditions. In support, Home Repair cites *Huang v. BP Amoco Corp.*, 271 F.3d 560, 565 (3rd Cir. 2001) where the Third Circuit, applying Pennsylvania law, considered a lease that permitted the lessee to terminate if the lessee was unable to obtain certain approvals. The court concluded that the implied covenant of good faith required that the lessee make a diligent and good faith effort to obtain the required approvals. *Id*. As in *Huang*, Home Repair argues Universal here was required to make a diligent effort to obtain PWDS's approval to the franchise transfer agreement.

Home Repair contends that a covenant of good faith and fair dealing is "implied in every [Illinois] contract absent express disavowal." *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 884 (7th Cir. 2000). Significantly, however, the good faith and fair dealing obligation is not a "separate obligation upon which a cause of action may be based" and it "has never been an independent source of duties for the parties to a contract." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-44 (7th Cir. 1992). Home Repair itself connects Universal's alleged breach of good faith with the provision in the Letter Agreement conditioning the transaction on the receipt of third party approvals.

In its complaint, Home Repair alleges that "Universal expressly agreed that it would seek to obtain the 'receipt of all approvals and consents . . . including but not limited to the consent of Paul W. Davis Systems, Inc.'" (Complaint ¶ 43.) Home Repair further claims that Universal acted

8

in bad faith when it did not succeed in obtaining PWDS's approval of the transaction. For example, Home Repair complains that: Universal was unreasonable in refusing to sign PWDS's Voluntary Termination Agreement; Universal did not try hard enough to persuade PWDS to approve the letter agreement; Universal unreasonably delayed informing Home Repair that PWDS would not approve the deal; and Universal failed to advise Home Repair that PWDS might be willing to approve the transaction in a different form.

The problem with Home Repair's argument is that the Letter Agreement contains no *express* provision that *Universal* would seek to obtain PWDS's consent. Rather, the parties merely agreed that the transaction would not proceed if PWDS did not grant its approval. (¶ 3(B) of Letter Agreement, Exhibit A to Amended Complaint.) The Letter Agreement did not specify whose responsibility it was to seek the consent, nor did it identify what would constitute a reasonable or diligent effort to gain PWDS's approval. At best, any obligation on Universal's part was implied, and Home Repair's assertion that Universal expressly agreed to seek PWDS's consent is plainly inaccurate.

Furthermore, to the extent that Universal implicitly agreed to seek PWDS's consent, Home Repair itself acknowledges that Universal met that obligation. In the complaint, Home Repair alleged: "By letter dated October 27, 1997, Universal, through an attorney, requested that PWDS consent to the transfer of Universal franchise rights and territories to Home Repair. The letter attached and referred to the Letter Agreement." (Amended Complaint ¶ 26.) Home Repair insists, apparently not recognizing the inconsistency, that requesting consent from PWDS was not enough to fulfill Universal's alleged obligation to request consent from PWDS. Under Illinois law, however, "an implied covenant of good faith cannot overrule or modify the express terms of a contract." *Northern Trust Co. v. VII South Michigan Assocs.*, 276 Ill. App. 3d 355, 367, 657 N.E.2d 1095, 1104 (1st Dist. 1995). Particularly where the express terms of the Letter Agreement do not require Universal to seek consent from PWDS, Home Repair may not use the implied covenant of good

faith and fair dealing to not only create a requirement that Universal request PWDS's consent, but also to amplify that obligation such that Universal's failure to do more than request PWDS's consent would constitute a breach.

Although the implied duty of good faith and fair dealing may support a cause of action under certain circumstances, those circumstances usually arise when one party to a contract is given broad discretion in the performance of an express obligation. See Beraha, 956 F.2d at 1443 (where license agreement granted licensee exclusive right to manufacture needles described in licensor's pending patent application and required licensee to pay royalties only if it developed and sold the needle, licensee was invested with significant discretion and was required to exercise that discretion reasonably); Oil Express Nat'l Inc. v. Burgstone, 958 F. Supp. 366, 369 (N.D. Ill. 1997) (franchise agreement gave franchisor broad discretion in performing its obligations to revise operations manual, provide management advice, and negotiate contracts with third parties). In this situation, "a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously." Oil Express Nat'l Inc., 958 F. Supp. at 369, quoting Foster Enters., Inc., v. Germania Fed. Sav. and Loan Assoc., 97 Ill. App. 3d 22, 421 N.E.2d 1375 (3d Dist. 1981). Here the fact that the Letter Agreement was conditioned upon PWDS's approval did not vest Universal with discretion concerning the alleged obligation to seek consent from PWDS for the transfer.

Nor are Home Repair's allegations consistent with any claim of arbitrary or capricious conduct on the part of Universal. Although it complains that Universal did not go far enough in its pursuit of PWDS's approval, Home Repair provides no basis for a conclusion that Universal acted unreasonably when, for example, it declined to sign the Voluntary Termination Agreement. Home Repair urges that there are "questions of fact as to whether Universal did everything possible to promote the approval of the Letter Agreement." (Memorandum of Plaintiff Home Repair in Support of Motion for Leave to Amend and in Opposition to Motion to Dismiss Complaint ("Home Repair

Opposition"), p. 8.) Home Repair points to nothing, however, either in the Letter Agreement or in the case law, that would impose a requirement that Universal do "everything possible" to gain PWDS's consent, or would render a failure to do "everything possible" unreasonable. Nor, in the court's view, could Home Repair support such a proposition in these circumstances. "A reasonable exercise of discretion . . . does not necessarily require a party to exert its best efforts, particularly where exerting best efforts would require a party to ignore its business judgment." *Beraha*, 956 F.2d at 1445.

Home Repair makes much of the fact that a party vested with contractual discretion must exercise it "in a manner consistent with the reasonable expectations of the parties," *Beraha* 956 F. 2d at 1436, and that Home Repair's own expectation "in signing the Letter Agreement, obviously, was that it would be allowed to complete the stated transaction." (Home Repair Opposition, p. 8). As noted previously, the court does not agree that the Letter Agreement vested Universal with discretion on the issue; it did not even identify Universal as the party required to seek consent from PWDS. So far as appears here, the only thing Universal could have done to get PWDS's approval was to capitulate on the noncompetition clause. But that would be contrary to the central assumption of the Home Repair/ Universal deal, with its sweetheart price tag. Whatever Universal's good faith and fair dealing obligations were, they could not have required Universal to take action contrary to the very focus of the agreement between Universal and Home Repair. Home Repair could not reasonably have expected to reap the benefits of the discounted price, while forcing Universal to give up the part of the deal that made that discounted price feasible. Significantly, Home Repair itself was aware that the condition requiring PWDS's approval would be difficult to meet: it noted numerous times in its complaint that it had warned Universal that it might be difficult to persuade PWDS to waive the noncompetition clause of Universal's franchise agreement. Those allegations defeat any suggestion that Home Repair had a reasonable expectation that Universal would be able to obtain PWDS's consent, or that Universal's failure to

11

obtain consent was unreasonable.

## CONCLUSION

For the foregoing reasons, Universal's motion to dismiss (Doc. No. 9-1) is granted and its motion to reassign (Doc. No. 0-1) is denied as moot. Home Repair has leave to file an amended complaint within 21 days.

ENTER:

Dated: June 3, 2002

REBECCA R. PALLMEYER
United States District Judge

12