# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7141 | **DATE** | 3/27/2003 |
| **CASE TITLE** | Home Repair, Inc. vs. Universal Restoration Services, Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Universal's motion to dismiss Plaintiff's SAC (Doc. No. 25-1) is granted. Plaintiff has leave to file a Third Amended Complaint on or before April 17, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 28 2003 date docketed | |
| | Notified counsel by telephone. | | | 29 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 3/27/2003 date mailed notice | |
| ETV | courtroom deputy's initials | 03 MAR 27 PM 5:40 | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOME REPAIR, INC., a Delaware corporation, ) ) ) Plaintiff, ) ) v. ) ) UNIVERSAL RESTORATION ) SERVICES, INC., an Illinois ) corporation, ) ) Defendants. ) | No. 01 C 7141<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Home Repair and Defendant Universal Restoration Services ("Universal") were franchisees in the Paul W. Davis System, ("PWDS"), a general contracting and cleaning business. This litigation arises from a failed attempt by Home Repair to purchase the PWDS franchise area assigned to Universal. On September 14, 2001, Home Repair filed its initial complaint, alleging that Universal breached express and implied terms within an October 22, 1997 letter agreement between the parties regarding the transfer of Universal's franchise territory. On December 12, 2001, Plaintiff filed an amended complaint alleging additional facts, but did not alter the original claims. On June 5, 2002, in *Home Repair, Inc. v. Universal Restoration Services, Inc.*, No. 01 C 7141, 2002 WL 1263992 (N.D. Ill. June 5, 2002), the court dismissed Home Repair's amended complaint without prejudice because it failed to allege that Universal breached the terms of the letter agreement. Following the court's decision, on June 24, 2002, Home Repair filed a second amended complaint, ("SAC"), in which it now asserts additional facts related to its breach of contract claim and an additional claim of common law fraud.

Universal again moves to dismiss both counts contained in the SAC for failure to state a claim for relief. For the foregoing reasons, the motion is granted.



## FACTUAL BACKGROUND

For purposes of this decision, the court accepts Plaintiff's allegation as true. Many of these alleged facts are described in the court's June 2002 opinion. For clarity, this decision repeats the factual background with specific reference to the additional allegations in Plaintiff's Second Amended Complaint.

Plaintiff Home Repair and Defendant Universal were both franchisees in the PWDS franchise network, which operates a general contracting and cleaning business that services both the general public and the insurance restoration markets. (SAC ¶ 10(a).) Home Repair operated its PWDS franchise in the Little Rock, Arkansas area, while Universal, which was known as Paul W. Davis Systems of Northern Illinois, until it withdrew from the PWDS network in January 1998, operated the franchise area comprising the greater Chicago metropolitan area. (Id. ¶¶ 7-9.)

Franchisees in the PWDS network were required to enter a franchise agreement with PWDS, which included: (1) a non-compete clause; and (2) a prohibition on the transfer of a franchise without the prior written consent of the franchisor, PWDS.[1] (Id. ¶ 10(c)-(d).) By September 1997, Phil Goldstein, Universal's principal officer, had became dissatisfied with his PWDS franchise and sought to run an independent insurance restoration business in the greater Chicago metropolitan area, similar to the business Universal had operated as a PWDS franchisee. (Id. ¶ 13.) Throughout September and October 1997, Goldstein unsuccessfully petitioned PWDS to waive the non-compete provision of the PWDS franchise agreement, thus allowing him to run his independent business without running afoul of that provision. (Id. ¶¶ 13-14.)

On an undetermined date in October 1997, Goldstein contacted Eric Tucker, the sole officer and shareholder of Home Repair, and told Tucker that he wanted to sell his PWDS territory to Home Repair, but remain a competitor in the territory. (Id. ¶ 17-19.) Tucker responded to this overture by pointing out that PWDS would seek to enforce the non-compete provision of the

---

[1] A complete copy of Universal's franchise agreement is attached to the SAC as Exhibit B.

2

franchise agreement, but Goldstein allegedly assured Tucker that he was prepared to litigate the issue with PWDS and that he "would not let the prospects of such litigation with PWDS deter him from transferring the territories to Home Repair." (*Id.* ¶ 19(c)-(d).)

During October 1997, Tucker and Goldstein continued to discuss the prospect of Universal's transferring its PWDS territory to Home Repair. (*Id.* ¶¶ 18-19.) At some point during these negotiations, Plaintiff alleges, Tucker and Goldstein reached an oral agreement that included the price term for the transfer and three conditions: (1) Home Repair agreed not to enforce the PWDS non-compete provision against Universal after the transfer; (2) Universal was responsible for obtaining the approval of the franchisor, PWDS, to the transfer; and (3) "if necessary, Universal would accept the risk of litigation with PWDS, after the sale, if PWDS attempted to enforce the non-compete clauses in Universal's franchise agreements."[2] (*Id.* ¶ 20(a)-(c).)

To memorialize this oral agreement, Goldstein and Tucker executed a letter agreement (hereinafter, "Letter Agreement") on October 22, 1997. (*Id.* ¶ 21.) Notably, the second and third conditions in the parties' alleged oral agreement are not mentioned in the Letter Agreement. The Letter Agreement provides for a purchase price of $450,000, a price Plaintiff characterizes as "substantially less than the fair market value of the Universal territories." (*Id.* ¶ 24.) In exchange for this price concession, Home Repair agreed not to enforce PWDS's non-competition provisions against Universal. (*Id.* ¶¶ 24-26.) Plaintiff alleges that the parties understood that the Letter Agreement was not a final contract, but that they nevertheless "intended and agreed that the Letter Agreement confirmed the binding agreement that Tucker and Goldstein had reached in their conversations." (*Id.* ¶ 29.) The Letter Agreement was expressly conditioned on the approval of PWDS and "the execution of a "mutually acceptable purchase agreement." (*Id.* ¶¶ 27, 29.) Specifically, the Letter Agreement stated:

---

[2] Plaintiff does not allege the date that the parties entered this oral agreement.

3

> The Transaction is conditional upon satisfactory completion of the following:
> (A) <u>Purchase Agreement.</u> Execution of a mutually acceptable purchase agreement embodying the terms of this letter ("Purchase Agreement").
> (B) <u>Approval.</u> Receipt of all approvals and consents from third parties which are necessary to consummate the transaction contemplated herein, including but not limited to the consent of Paul W. Davis System, Inc. (the "Franchisor") and the waiver by the Franchisor of its rights of first refusal pursuant to Section 20.2 of the Franchise Agreement.

(Letter Agreement, Exhibit A to Plaintiff's SAC.)

Plaintiff claims that "[o]nly Universal had standing under its PWDS franchise agreement to seek and obtain the approval of PWDS as required under Universal's applicable franchise agreements." (*Id.* ¶ 28.) As a result, the parties understood, at the time the Letter Agreement was executed, that Universal would be responsible for seeking the approval of PWDS to the territory transfer. (*Id.*)

On October 27, 1997, Universal submitted the Letter Agreement to PWDS for approval, but, in a November 24, 1997 letter, Scott Baker, president of PWDS, refused to approve the transfer. (*Id.* ¶¶ 33-34(a).) Baker's letter stated, "PWDS cannot consent to a proposed transfer unless the transferring franchisee agrees to continue to comply with the non-compete provisions contained in the franchise agreement." (*Id* ¶ 34(b).) Baker stated, further, that it was standard procedure for PWDS to require "transferring franchisees . . . to execute a standard Voluntary Termination Agreement and Release, which provides, in relevant part, that the covenant against competition survives termination of the franchise agreement." (*Id.*) Lastly, Baker stated that "if you elect to modify your transaction so that [Universal] will not continue to engage in the insurance restoration business, PWDS will, of course, reconsider your request for consent at that time." (*Id.* ¶ 34(c).)

After receiving this letter, Plaintiff alleges, Universal did not: advise Home Repair of the rejection by PWDS; make a further attempt to obtain the approval of PWDS; modify the Letter Agreement; offer to sign the Voluntary Termination Agreement; or litigate the enforceability of the non-compete provision. (*Id.* ¶¶ 35-36.) Instead, late in November 1997, without informing Home Repair, Universal entered "secret negotiations" with PWDS to be released from the non-compete

provision, abandoning any efforts to have the franchise area transferred to Home Repair pursuant to the parties' agreement. (*Id.* ¶ 37.)

In January 1998, these secret negotiations produced a tentative written agreement between PWDS and Universal, which provided that: (1) Universal would allow PWDS to reclaim its franchise territories; (2) Universal would pay PWDS $402,000; and (3) Universal would be released from the PWDS non-compete provision. (*Id.* ¶ 38(a)-(c).) On or about January 13, 1998, this tentative agreement between Universal and PWDS was memorialized in a modified "Voluntary Termination Agreement." (*Id.* ¶ 39.) Because this tentative agreement prevented Home Repair from obtaining the franchise area of Universal, PWDS proposed a provision requiring that Universal to indemnify PWDS from any future lawsuits by Home Repair regarding the lost opportunity. (SAC ¶ 40.)

Universal did not inform Home Repair about the January 13, 1998 tentative agreement. Instead, on January 14, 1998, Goldstein faxed a letter, dated January 12, 1998, to Tucker, stating that he was "continuing his efforts to negotiate with [PWDS], and will keep you posted." (*Id.* ¶ 60.) On January 15, 1998, Tucker sent Goldstein a letter expressing his continued interest in working towards a successful transaction.[3] (SAC ¶ 43.)

Plaintiff alleges that Goldstein made the statement to mislead Home Repair into believing that Universal was still attempting to obtain the approval of PWDS to the parties' transfer agreement. (*Id.* ¶ 60.) In reality, however, Universal was negotiating only for itself. (*Id.*) Home Repair alleges that Universal's "representation was knowingly false when made and was made with deliberate intent to deceive Home Repair." (*Id.*) Because of the contractual relationship between the parties, Home Repair alleges that Universal owed it a duty to provide both accurate and complete information regarding Universal's efforts to obtain the approval of PWDS and that Universal omitted information for the purpose of misleading Home Repair. (*Id.* ¶ 61.) According to Home Repair, it relied on this letter from Universal and, as a result, decided to remain "on the

---

3      Home Repair does not allege how Goldstein responded to this letter, if at all.

sidelines" awaiting the results of the negotiations, which meant that Home Repair missed the opportunity to acquire Universal's territories and suffered lost profits and diminution in value. (*Id.* ¶¶ 62, 64.) Home Repair also alleges that Universal used the misrepresentations to further its goal of using Home Repair as a "pawn in its litigation strategy against PWDS . . . ." (*Id.* ¶ 65.)

On an undetermined date, Universal rejected the additional indemnity provision proposed by PWDS. (*Id.* ¶ 44.) After rejecting this proposed term, Universal attempted to obtain a release from Home Repair for $50,000, based on Goldstein's mistaken belief that the Letter Agreement contained a liquidated damages provision.[4] (*Id.*) In a February 6, 1998 letter, Home Repair demanded that Universal close the sale of its franchise area to Home Repair, but Universal ignored this demand and continued to negotiate with PWDS on its own behalf. (*Id.* ¶ 45.)

In February or March 1997, the tentative agreement between PWDS and Universal fell through, in large part because Universal would not agree to indemnify PWDS against future claims brought by Home Repair. (*Id.* ¶ 46.) Subsequently, on or about April 2, 1998, Universal filed a lawsuit against PWDS, challenging the enforceability of the noncompetition provisions in the franchise agreement. (*Id.* ¶ 47.) On October 15, 1998, in *Paul Davis Systems of Northern Illinois Inc. v. Paul W. Davis Systems, Inc.*, No. 98 C 2027, 1998 WL 749041 (N.D. Ill Oct. 15, 1998), Judge Grady ordered the parties to arbitrate these claims pursuant to the terms of the franchise agreement. (*Id.* ¶ 48.)

In November 2000, Universal decided to sever all ties with PWDS and operate as a competitor to PWDS in its franchise area, in violation of the PWDS non-compete provision. (*Id.* ¶ 49.) Universal made the decision to operate as a competitor without obtaining a judicial determination regarding the enforceability of the non-compete provision. (*Id.*) In February 2001, however, in an unsuccessful motion to vacate the arbitration order, Universal alleged that the agreement between Tucker and Goldstein was " 'finalized' and 'memorialized' " in the October 22,

---

[4] Home Repair does not provide further details regarding this offer, but the court presumes that Plaintiff rejected the offer.

6

1997 Letter Agreement. (*Id.*)

## DISCUSSION

As stated briefly earlier, Home Repair asserts two counts of wrongdoing on the part of Universal. Home Repair asserts, first, that Universal breached the terms of the oral contract and Letter Agreement reached by the parties to transfer Universal's PWDS franchise area to Home Repair. In Count II, Home Repair alleges common law fraud based on Goldstein's January 14, 1998 letter to Tucker, in which Goldstein stated that he was "continuing his efforts to negotiate with [PWDS], and will keep you posted." Universal has moved to dismiss both counts for failure to state a claim for relief.

On a motion to dismiss, this court accepts as true all well-pleaded facts and allegations in the plaintiff's complaint, and construes the complaint's allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). This court is not, however, required to accept as true conclusory statements of law or unsupported conclusions of fact. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). "[W]here the allegations of a pleading are inconsistent with the terms of a contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (citations omitted). Further, "where a plaintiff alleges facts that establish that a defendant is entitled to prevail on a motion to dismiss, the court may find that the defendant has plead himself out of court." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) (citation omitted).

With these standards in mind, the court addresses Home Repair's claims in turn.

### Count I: Breach of Contract

In Count I of its complaint, Home Repair alleges that Universal breached its express and implied contractual obligations by: failing to execute the documents necessary to obtain the consent of PWDS to the proposed transfer; failing to advise Home Repair that PWDS might consent if the Letter Agreement were modified; failing to propose a reasonable modification to the Letter

7

Agreement; entering secret negotiations with PWDS rather than pursuing the transfer with Home Repair and accepting the risks of litigation; misleading Home Repair that it was continuing to negotiate with PWDS, when, in fact, Universal had abandoned the possibility of transferring its territory to Home Repair; and refusing to close on the Letter Agreement as demanded by Home Repair. In response, Universal argues that this claim should be dismissed because Home Repair has failed to allege that an enforceable contract exists between the parties; because the alleged terms of the oral contract are barred by the parol evidence rule; because the oral contract is unenforceably vague; and because Home Repair has failed to allege a breach.

To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Gonzalzles v. American Exp. Credit Corp.*, 315 Ill. App. 3d 199, 206, 733 N.E.2d 345, 351 (1st Dist. 2000).

Universal argues, first, that Home Repair cannot allege that a valid and enforceable contract existed between the parties because the Letter Agreement, which memorialized the parties' oral agreement, was conditioned upon execution of a formal purchase agreement for the franchise territory. *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill. App. 3d 550, 559, 484 N.E.2d 1178, 1185 (1st Dist. 1985) ("[I]f the later execution of a formal agreement is a condition precedent to the formation of a binding contract, no prior writing will create an effective contract.") (citation omitted). The court recognizes that mere reference to a future contract in a letter of intent between parties will not preclude enforcement of the terms of the letter. Still, if the parties "construe the execution of a formal agreement as a condition precedent, then no formal contract arises unless and until that formal agreement is executed." *Quake Construction Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 287-88, 565 N.E.2d 990, 993 (1990), quoting *Chicago Investment Corp. v. Dolins*, 107 Ill.2d 120, 126-27, 481 N.E.2d 712, 715 (1985).

The best indication of the parties' intent is the language of the Letter Agreement, but if that language is ambiguous, the court may consider parol evidence to determine whether the parties

intended to be bound. *Magnus v. Lutheran General Health Care Sys.*, 235 Ill. App. 3d 173, 181, 601 N.E.2d 907, 913 (1st Dist. 1992). In this court's view, the language of the Letter Agreement is unambiguous. It provides: "The Transaction is conditional upon satisfactory completion of . . . (A) [E]xecution of a mutually acceptable purchase agreement embodying the terms of this letter . . . and (B) . . . Receipt of all approvals and consents from third parties . . . including . . . the consent of [PWDS] . . . and the waiver of [PWDS' right of first refusal] . . ." This language establishes, first, that the future purchase agreement was a condition precedent and that no binding contract existed until that future agreement was executed. *See Magnus*, 235 Ill. App. 3d at 180, 601 N.E.2d at 913 (the execution of a formal agreement was a condition precedent where the letter of intent provided that defendant's obligations were "specifically conditioned upon . . . entering into the Purchase Agreement within thirty (30) days . . ."); *Interway, Inc. v. Alagna*, 85 Ill. App. 3d 1094, 1100, 407 N.E.2d 615, 620 (1st Dist. 1980) (no contract existed when parties agreed that the purchase was "subject to a definitive Purchase and Sale Contract" to be executed by the parties"). Second, the Letter Agreement acknowledges the obvious: that Universal and Home Repair could not, merely by their own agreement, defeat PWDS's franchise rights.

Home Repair argues that even if the future agreement between the parties was a condition precedent, Universal is not permitted to claim the failure of a condition which Universal itself prevented. *Cummings v. Beaton & Assocs., Inc.*, 249 Ill. App. 3d 287, 303, 618 N.E.2d 292, 306 (1st Dist. 1992) ("[i]f one party directly *causes* the condition to fail, however, the contract may be fully enforced against that party; one cannot take advantage of his own conduct and then claim that the resulting failure of the condition defeats his liability.") (emphasis in original) (citation omitted). The court notes, however, that the first condition is that the parties agree to a "mutually acceptable purchase agreement" in the future. Following Home Repair's argument to its logical conclusion, the only way either party could have avoided a breach of the Letter Agreement was to enter into a purchase agreement, regardless of the terms or subsequent circumstances. To find that Universal was bound to enter into a subsequent purchase agreement with Home Repair would

make the Letter Agreement a binding contract, contrary to the express language of that document.

Home Repair suggests the failure of the second condition precedent – PWDS's agreement to waive its rights – was also Universal's responsibility, but offers no basis for the suggestion that Universal controlled PWDS. Instead, in the Second Amended Complaint, Plaintiff alleges the existence of an oral agreement between the parties. That oral agreement, Plaintiff alleges, required Universal to "seek the approval" of PWDS to the proposed transfer and "accept the risk of litigation with PWDS, after the sale," should PWDS attempt to enforce the non-compete clauses in its agreement. There are several problems with this argument. First, Universal's alleged failure to seek PWDS's approval could not have harmed Plaintiff unless such efforts would have been successful. In fact, PWDS was unwilling to waive the noncompetition provision in its franchise agreement with Universal; Plaintiff alleges that Tucker himself warned Goldstein in October 1997 that PWDS would sue Universal to enforce those provisions. (*Id.* ¶ 18.) Second, Plaintiff's allegation that Universal orally agreed to "accept the risk of litigation, after the sale," is flatly inconsistent with the terms of the Letter Agreement, which required PWDS's approval as a condition of the sale. Finally, Plaintiff's claim relies on an assumption that had Universal truly been willing to litigate the enforceability of the noncompete provision, such litigation would have resulted in a determination that those provisions were void. Instead, as Plaintiff's own complaint alleges, Universal's 1998 lawsuit against PWDS resulted in nothing more than protracted arbitration. (*Id.* ¶¶ 47-50.)

The additional allegations concerning an oral agreement do not shore up Home Repair's claim. Home Repair has not alleged the breach of a binding enforceable contract between the parties. The court therefore dismisses Count I.

**Count II: Common Law Fraud**

In Count II of its SAC, Home Repair alleges a common law fraud claim arising out of Goldstein's January 1998 letter in which he stated: "We are continuing our efforts to negotiate with [PWDS], and will keep you posted." (SAC ¶ 60.) Home Repair argues that in this statement,

10

Defendant falsely represented that it was still negotiating with PWDS over the proposed transaction between Universal and Home Repair when, in fact, Universal had abandoned its agreement with Home Repair and was negotiating purely for itself. In addition, Home Repair claims that Universal breached its duty to provide Home Repair with full and complete information regarding the negotiations. Universal argues that this claim should be dismissed because Home Repair has failed to allege the elements of a fraud claim as required by FED. R. CIV. P. 9. Specifically, Defendant argues, Home Repair has not alleged: a false statement of present fact; that Home Repair's reliance was reasonable; that Universal intended to induce action on the part of Home Repair; that Home Repair suffered any damages as a result of the statement; or that Universal owed Home Repair any duty to provide accurate and complete information.

The elements of a cause of action for fraudulent misrepresentation are: (1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Prime Leasing Inc. v. Kendig*, 332 Ill. App. 3d 300, 311, 773 N.E.2d 84, 94 (1st Dist. 2002). In contrast to the general liberal pleading standard, Rule 9 imposes a requirement that any claim of fraud be pleaded with particularity. *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 468 (7th Cir.1999), citing FED. R. CIV. P. 9(b).[5]

Universal argues, first, that the statement, "we are continuing to negotiate" was not false. The court agrees. It is clear from Plaintiff's allegations that PWDS and Universal were in fact still negotiating at the time Goldstein sent this letter. (SAC ¶ 46.) Although PWDS and Universal reached a tentative agreement prior to Universal's January 14, 1998 letter, this agreement fell apart when PWDS demanded an additional term, regarding indemnification. (*Id.*) Nor was Goldstein's

---

[5] Federal Rule of Civil Procedure 9(b) states "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." FED. R. CIV. P. 9(b).

statement, that Universal "will keep you [Home Repair] posted" an actionable statement. Universal's vague promise was a statement of future intent, not of present fact and is therefore not actionable as part of a fraud claim. *Doherty v. Kahn*, 289 Ill. App. 3d 544, 562, 682 N.E.2d 163, 176 (1st Dist. 1997) (misrepresentations as to future conduct are deemed "promissory fraud" and are typically not actionable). Even if the court were to conclude that Goldstein's statement was misleading, Plaintiff has not explained how it relied on that statement to its detriment. Nothing about the statement can be interpreted as assurance that PWDS would agree to waive the noncompetition provision of its franchise agreement with Universal.

In the alternative, Home Repair alleges that Universal committed a fraudulent omission by failing to provide complete and accurate information regarding the status of Universal's negotiations with PWDS. An affirmative statement is not always required for a plaintiff to state a claim for fraud. *Washington Courte Condominium Association-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 815, 643 N.E.2d 199, 216 (1st Dist.1994). In order for Plaintiff to properly allege a material omission, however, Illinois law provides that "[t]he concealment may not be a mere passive omission of facts during a business transaction but must have been done with the intent to deceive under circumstances creating an opportunity and duty to speak." *Farm Credit Bank of St. Louis v. Isringhausen*, 210 Ill. App. 3d 724, 731, 569 N.E.2d 235, 240 (1991) (citation omitted). "There is no duty to speak absent a fiduciary or other legal relationship between the parties." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 573, 692 N.E.2d 812, 817 (1st Dist. 1998) (citations omitted).

Plaintiff claims that Universal had a duty to speak because of the contractual relationship between the parties. (SAC ¶ 61.) The court notes, first, as stated above, that there was no binding contractual relationship between the parties. Even if the parties had entered a binding contract, however, Home Repair has not alleged how this contractual relationship created any fiduciary duty

on the part of Universal.[6] More importantly, Plaintiff offers no basis for the conclusion that it was actually misled by Universal's silence. Thus, the court finds that plaintiff has failed to properly allege a fraudulent omission and dismisses Count II without prejudice.

## CONCLUSION

Home Repair and Universal entered into an agreement that both parties knew was inconsistent with Universal's obligations as a franchisor of PWDS. In this lawsuit, Home Repair characterizes Universal's refusal or inability to find some way around those obligations as a breach of contract or fraud. The court has grave doubts that the detailed facts Home Repair has alleged can support any claim for relief. The court will, however, give Home Repair one final opportunity. Universal's motion to dismiss Plaintiff's SAC (Doc. No. 25-1) is granted. Plaintiff has leave to file a Third Amended Complaint on or before April 17, 2003.

ENTER:

Dated: March 27, 2003

REBECCA R. PALLMEYER
United States District Judge

---

[6] Plaintiff urges that a duty to speak can arise absent a fiduciary relationship, but the case he cites, Soranno v. New York Life Ins. Co., No. 96 C 7882, 2000 WL 748145 (N.D. Ill. May 31, 2000), is distinguishable. Plaintiffs in Soranno were individual investors who gave money to a New York Life insurance agent to purchase insurance policies, annuities, and mutual fund investments. After the agent was convicted of criminal fraud, the investors brought a civil action against New York Life. The court declined to dismiss Plaintiffs' claim that, once New York Life learned of its agent's fraudulent conduct, New York Life had a duty to correct those misstatements but intentionally failed to correct plaintiffs' perceptions. Here, Home Repair alleges that its own contracting partner, Universal, failed to advise Home Repair that Universal was unable to obtain PWDS's approval to a deal that Home Repair itself believed PWDS would not approve.